McCALEB, Justice.
This case involves the application of plaintiff railroad for permission to discontinue its agency station at Pitkin, Louisiana, a small rural community (less than 800 persons 'within a radius of 3 miles) in Vernon Parish. Gulf, Colorado & Santa Fe Railroad Company, a corporation chartered under the laws of Texas, does business, both interstate and intrastate, as a common carrier in Louisiana, its lines extending from points in Texas to Oakdale, Louisiana and' for many years has operated freight agency stations at De Ridder (Beauregard Parish), Pitkin (Vernon Parish), and Elizabeth (Allen Parish). Pitkin is 23 miles north of De Ridder and Elizabeth is approximately 10 miles to the east. State Highways Nos. 10 and 113 run through Pitkin; both of these roads are asphalt paved, all purpose highways. However, there are no freight truck lines operating through Pitkin, which has only 10 business establishments, two groceries, two general mercantile stores, two cafes and four service stations. The principal freight shipped from the Pitkin agency station in carload lots (60 during a 12-month period) has been poles, pu-lpwood and logs and the freight shipments received in carload lots (9 during a 12-month period) have been feed, cement and limestone.
Alleging that, during a period extending from June, 19S7 to May, 1958, it operated its station agency at a loss and that there was no public necessity for the continued operation of an agency at Pitkin, the railroad company applied on June 20, 1958 to the Public Service Commission for per *76 mission to discontinue operation of the station as such, suggesting that shippers and receivers of freight could be conveniently-accommodated by its stations at either Elizabeth or De Ridder. This application was opposed by residents of Pitkin and the near vicinity. After a hearing, the Commission issued its Order No. 7598, denying the railroad’s request. A rehearing was applied for which was granted but, after further consideration, the original order was affirmed.
Thereafter the railroad, asserting that the ruling of the Commission was without reasonable evidence to support it, being arbitrary and an abuse of discretionary power vested in that body, petitioned the Nineteenth Judicial District Court for the Parish of East Baton Rouge to annul the Commission’s order and declare that, in the future, it may operate its station at Pitkin as a non-agency station. In support of its claim of net operational losses, the railroad attached to its petition data showing that, over a period of 20 months extending from May, 1957 through December, 1958, it had sustained a loss totalling $8084. Since the period of operations reflected by the petition covered a longer operating period (20 months) than that presented to the Commission, the district judge, acting pursuant to R.S. 45:1194—1195, remanded the case to the Commission in order to afford it a review of the new evidence. However, a consideration of the railroad’s continuing losses did not alter the view of the Commission and, in reaffirming its holding, it stated that it found nothing in the new evidence to affect its previous decision that the public convenience and necessity required the service of an agent at the railroad station at Pitkin.
When the case was returned to the district court for review, the Commission’s orders were reversed and judgment was rendered permitting the closing of the agency station. In his written reasons, the judge indicated that, while he did not subscribe to the formula the railroad company employed in establishing a substantial loss in its operations at the Pitkin station, he felt bound by the well-settled jurisprudence of this Court that, in the absence of evidence challenging the accuracy of the railroad’s method of accounting, or unless some better system of accounting is presented, the Commission must accept the railroad’s formula for computing the revenue from and the cost of operating a station agency.[1] See Missouri Pacific R. Co. v. Louisiana Pub. Service Comm., 238 La. 243, 115 So.2d 337; Louisiana & Ark. Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 658, 124 So.2d 899; Illinois Central R. Co. v. Louisiana Public Service Comm., 240 La. 769, 125 So.2d 159; Illinois Central R. Co. v. Louisiana Public Service Comm., 241 La. 1, 127 So.2d 178 and Louisiana & Ark. Ry. Co. v. Louisiana Pub. Service Comm., 242 La. 67, 134 So.2d 551.
The Commission has appealed from the adverse ruling contending, in the main, that the judge erred in resting his decision entirely upon the loss experienced by the railroad under its formula and in failing to take into consideration, irrespective of such loss, the evidence which shows that the public convenience and necessity requires that the agency station at Pitkin he continued and maintained as such.
It is true that the reasons assigned by the judge for his decision are predicated, on the railroad’s losses and he does not comment that he also, took into account the public inconvenience which may ensue as a consequence of the closing of the agency. However, the converse is likewise true in respect of the views of the Commission— that is, the reasons assigned for its orders *77 show that it attached no importance to and, indeed, placed no credence in the evidence adduced by the railroad relative to its continuing loss in the operation of the agency station. Our jurisprudence is that it is necessary to weigh one factor against the other. As stated in Texas & Pacific Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 669, 672, 124 So.2d 902, 904:
“ * * * the test employed in determining whether or not a railroad may properly be entitled to discontinue an agency station, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency * * *
It was therefore incumbent on the Commission to weigh the losses suffered by the railroad against the inconvenience to the community of the discontinuance of the agency. This, the Commission failed to do and, consequently, the normal presumption of the correctness of its orders cannot apply here.
The question presented is what degree of inconvenience to the Pitkin community will attend the discontinuance of the agency and, is that degree sufficient to justify causing the railroad to continue to sustain a substantial loss by requiring it to maintain the agency.
The record convinces us that the public inconvenience involved is not great. The nearest agency to the Pitkin community is about ten miles away, in Elizabeth. Arrangements for shipping carload lots from Pitkin can be made by telephoning the agent in Elizabeth and the railroad will pay the cost of the call. Outgoing less than carload shipments can be turned over to the freight train conductor, who will sign the bill of lading and deliver it to the next agency for waybilling. Incoming carloads will be left on the siding at Pitkin and incoming less than carload lots will be off-loaded at the Pitkin station, it being suggested by the railroad that these goods be locked in the station freight room and the key left with some responsible person in the immediate vicinity. The only situation that would require a trip to Elizabeth would be in connection with receiving a C.O.D. shipment. Although some inconvenience might be involved in these arrangements, such inconvenience is not of sufficient degree to justify requiring the railroad to maintain an agency when it could only do so at a substantial monetary loss.
The Commission’s Order No. 8478 (the last order) attached significance to the fact that the closing of the Pitkin agency would leave 34 miles of the line (between De Ridder and Elizabeth) without an agency. This ignores the fact that there are now almost 25 miles (between De Ridder and Pitkin) without an agency and the closing of the Pitkin agency would merely be the closing of an agency where there is another agency within 10 miles (Elizabeth).
The facts of the instant matter are not intrinsically different from those in Louisiana & Ark. Ry. Co. v. Louisiana Pub. Service Comm., 242 La. 67, 134 So.2d 551; Texas & N. O. R. R. Co. v. Louisiana Pub. Service Comm., 241 La. 635, 130 So.2d 398; Illinois Central R. Co. v. Louisiana Public Service Comm., 241 La. 1, 127 So.2d 178; Illinois Central R. Co. v. Louisiana Public Service Comm., 240 La. 769, 125 So.2d 159; Louisiana & Ark. Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 658, 124 So.2d 899; Texas & Pacific Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 669, 124 So.2d 902 and Missouri Pacific R. Co. v. Louisiana Pub. Service Comm., 238 La. 243, 115 So.2d 337. All of these cases involved applications to close unprofitable agencies where the nearest neighboring agency was from four to ten miles distant. In each the railroad established precisely the same facts plaintiff has shown here, i. e., that the agency was operated at a loss and the people who used the agency could transact their business with a nearby agent, usually by telephone, the greatest ensuing inconvenience being that a few people would be *78 required to go a few miles further’ to reach an agency station.
The judgment is affirmed.
FOURNET, C. J., absent.
HAMITER, J., dissents.

. The railroad’s formula attributes to each agency only 50% of the revenues from the freight it handles and applies against it, not only the expense of operating the agency but also a certain portion of the system-wide operating costs. For a more complete explanation of this method, see Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337.